**R. DEVINE, Plaintiff,**

v.

**Arthur W. LONSCHEIN, Robert J. Sise, as Administrator of the Unified Court System of the State of New York, State of New York, Defendants.**

**No. 84 Civ. 6684–CSH.**

United States District Court,
S.D. New York.

Oct. 10, 1985.

Robert Devine, Hollis, N.Y., pro se.

Robin Faine, Associate Counsel, Unified Court System, New York City, for defendants Lonschein & Sise.

Robert Abrams, Atty. Gen., New York City, for State of N.Y.; Randolph Volkell, Asst. Atty. Gen., of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This is an action allegedly founded upon 42 U.S.C. §§ 1981 and 1983. Complaint, ¶ 4. Plaintiff Robert Devine, appearing *pro se*, is an attorney admitted to practice in New York State. Defendant Arthur W. Lonschein is a Justice of the Supreme Court of the State of New York, with chambers in Jamaica, New York. Defendant Robert J. Sise is the Chief Administrative Judge of the Unified Court System of the State of New York. The complaint also identifies the State of New York as a defendant.

Defendants Lonschein and Sise now move to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6), F.R.Civ.P. Both motions introduce by affidavit evidentiary materials which fall outside the boundaries of the complaint. Accordingly I treat the motions as motions for summary judgment under Rule 56.

The papers supporting and opposing the motions reveal the following facts. On September 19, 1984, Mr. Devine appeared before Justice Lonschein in Special Term, Part Two of the Supreme Court, Queens County. Mr. Devine represented an infant plaintiff in a personal injury action, *Khan v. Williams*, Index No. 952–82. Mr. Devine appeared with his clients before Justice Lonschein for the purpose of obtaining the court's approval of the compromise of the claim.

The transcript submitted with the motion papers reflects that when Mr. Devine first appeared in chambers before Justice Lonschein, he was not wearing a necktie. Justice Lonschein asked Mr. Devine "to step out and to come back into this room properly dressed," by which, the record makes clear, the judge meant wearing a necktie. Mr. Devine thereupon stated that he wished to make a statement for the record. A court reporter was summoned. The record reflects Mr. Devine's contention that Justice Lonschein was subjecting him to sex discrimination, since "women attorneys are not required to wear ties before this Court or any other court...." Tr. at 3. Justice Lonschein adhered to his position. Mr. Devine thereupon produced a necktie out of his coat pocket, put it on, and the Khan matter proceeded.

The complaint filed by Mr. Devine in this Court alleges that he was "subjected to, and the victim of, discrimination, on the

basis of sex," ¶ 9, in that Justice Lonschein ordered him to wear a tie, and requires other male attorneys to do so, although he does not require female attorneys to wear a tie. ¶¶ 10–11. The complaint contains comparable allegations of discrimination in respect of the wearing of jackets and removal of hats or headwear upon entering the courtroom, ¶¶ 11–15, although those particular acts of alleged discrimination do not appear to be implicated in the case.

Justice Lonschein is sued as the perpetrator of allegedly discriminatory acts. Justice Sise is sued on the theory that, in his supervisory position, he "establishes the policy and procedure to be adhered to in the daily operation of the Courts of the defendant State of New York." Complaint, ¶ 8.

Plaintiff seeks compensatory and punitive damages, and injunctive relief.

■ Although the complaint invokes 42 U.S.C. § 1981 as well as § 1983, it is clear that no cause of action arises under § 1981. Plaintiff's claim is solely one of sex discrimination. Section 1981 addresses discrimination on the ground of race. It does not address categories of selectivity based on sex. *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Accordingly, the claim, if cognizable at all, falls under § 1983. Plaintiff's theory is that the Equal Protection clause of the United States Constitution is implicated. Complaint, ¶ 19. Pendent state claims are asserted under the New York State Constitution and Civil Rights Law. *Id.* at ¶ 18.

■ The defendant judges enjoy an absolute immunity from plaintiff's claims for damages. Accepting the allegations of the complaint as true, it cannot be argued that either judge lacked jurisdiction over the subject matter before him. The judges are, in consequence, immune from claims for money damages. That immunity extends to § 1983 actions. *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

■ To the extent that plaintiff seeks prospective injunctive relief, judicial immunity is not a bar. *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).

Accordingly the question arises, under Rule 12(b)(6), as to whether the complaint states a claim upon which relief can be granted. I conclude that it does not.

There is apparently no case directly in point. However, two federal appellate cases arising out of the job discrimination area are instructive.

■ In *Longo v. Carlise DeCoppet & Co.*, 537 F.2d 685 (2d Cir.1976), plaintiff brought a Title VII sex-discrimination action. Plaintiff, a male employee of defendant, alleged that he was fired because of the length of his hair, which would be permissible on a female employee. The Second Circuit, in a *per curiam* opinion, agreed with four other courts of appeals in holding "that requiring short hair on men and not on women does not violate Title VII." 537 F.2d at 685 (citing cases). The complaint was dismissed for failure to state a claim.

In *Carroll v. Talman Federal Savings and Loan Association of Chicago*, 604 F.2d 1028 (7th Cir.1979), the female employees of defendant bank brought a charge of sex discrimination because of differences in dress. The bank designed, and required women employees to wear, a two-piece uniform. In contrast, comparable male employees were permitted to wear business suits, business-type sports jackets with pants and ties, or leisure suits with a "suitable shirt and tie." 604 F.2d 1029–30. A divided panel of the Seventh Circuit held that this rule of dress was "based on offensive stereotypes prohibited by Title VII." *Id.* at 1033.

While § 1983 constitutes a different component of the federal civil rights laws, allegations of sex discrimination in the Title VII context are sufficiently analogous to constitute useful precedent.

*Longo v. Carlise DeCoppet & Co., supra*, rejects by implication a rule that any

distinction in dress or grooming based upon sex is *per se* violative of federal law. Because that is so, an employer may permit women employees to wear their hair longer than it permits male employees.

However, the majority opinion in *Carroll, supra,* stands for the proposition that when an employer requires women employees to wear stereotype-creating uniforms, while permitting male employees a wide variety of apparel, the line of impermissible discrimination based on sex has been crossed.

In the case at bar, did Justice Lonschein cross that line? I am not persuaded that he did. Justice Lonschein shares with all judges the inherent power to ensure proper conduct in his courtroom. Indeed, that power is cast in terms of obligation in section 100.3(a)(2) of the Rules of the Chief Administrative Judge, 22 N.Y.C.R.R. § 100.3(a)(2), which states that: "A judge shall maintain order and decorum in proceedings before him or her." Justice Lonschein, in respect of proceedings in his courtroom and chambers, apparently takes the position that male attorneys should wear neckties; but he does not impose that requirement upon female attorneys. In making that distinction, Justice Lonschein cannot reasonably be charged with impermissible sex discrimination. He is saying no more, and no less, than that a male attorney appearing without a necktie is lacking in decorum, whereas a female attorney who does not wear a necktie is not lacking in decorum.

The distinction is, in my view, the functional equivalent of the distinction upheld in *Longo*, where the employer concluded, without violating the civil rights laws, that long hair on male employees constituted impermissible grooming, whereas long hair

on female employees did not. Neither case rises to the level of enforced stereotyping by dress implicated in *Carroll.*

At least until that dreadful day when unisex identity of dress and appearance arrives, judicial officers such as Justice Lonschein are entitled to some latitude in differentiating between male and female attorneys, within the context of decorous professional behavior and appearance. I may judicially notice that, in this year of grace 1985, virtually all male attorneys admitted to the bar wear neckties (four in hand or bow) when they appear in court or in a judge's chambers, whereas only a distinct minority of female attorneys do so. And these differences in style of dress result not from mandates imposed upon the male and female attorneys by some coercive authority (as in the case of the female bank employees in *Carroll*), but rather because this is the current fashion. Because contemporary fashions are different, a judge may permissibly conclude that a male attorney appearing in court without a necktie is lacking in proper decorum, whereas a female attorney not wearing a necktie is not subject to that criticism.

Accordingly the constitutional claim against both defendants fails, and must be dismissed. The pendent state claims will be dismissed as well.

■ Except as noted in the margin, I reach no other issue.[1]

Because the complaint raised a claim of some arguable constitutional merit, I deny defendants' application for costs and attorneys' fees.

The Clerk of the Court is directed to dismiss the complaint with prejudice and without costs.

It is SO ORDERED.

---

1. Justice Sise has submitted an affidavit to the effect that the Chief Administrative Judge, apart from the general provision in the rule quoted in text, has issued no policy with respect to codes of dress in courtrooms. It is left to each individual judge to establish rules and policies that will promote "order and decorum" in his or her courtroom. That includes discretion in each individual judge to determine whether he or she wishes to establish a dress code. Sise affidavit at ¶¶ 4, 5. These allegations are not controverted. This demonstrated lack of personal participation by Justice Sise in the acts complained of furnishes an alternative basis for dismissal of the complaint, in all its aspects, as against him. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).